**F I L E D**
CLERK, U.S. DISTRICT COURT

2/5/2026

CENTRAL DISTRICT OF CALIFORNIA
BY: _____ KM _____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

June 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 2:26-cr-00060-MWC |
| Plaintiff, | I N D I C T M E N T |
| v. | [18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1028A(a)(1): Aggravated Identity Theft; 18 U.S.C. § 1956(h): Conspiracy to Engage in Money Laundering; 18 U.S.C. § 1956(a)(1)(B)(i): Concealment Money Laundering; 18 U.S.C. §§ 981(a)(1)(C), 982, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |
| NAZARET CHAKRIAN, aka "Niko," aka "Nazo," aka "Nick," ARNOLD MORADIANS, aka "Julian," CYNTHIA BORJAS, aka "Cindy," aka "Cindee," APRIL FERGUSON, AVETIS HEKIMYAN, aka "Avo," aka "Chef Avo," aka "Novva," ROSS TARKHAN, TIGRAN HOVANESIAN, ARMEN VARDEVARYAN, aka "Gonch," CRAIG HIGDON, HELEN SPANGLER, VICTOR LOSSI, and MARINE SARKISIAN, | |
| Defendants. | |

COUNT ONE

[18 U.S.C. § 1349]

[DEFENDANTS CHAKRIAN, MORADIANS, BORJAS, FERGUSON, HEKIMYAN, TARKHAN, VARDEVARYAN, HIGDON, SPANGLER, LOSSI, AND SARKISIAN]

A.    INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.    Defendant NAZARET CHAKRIAN, also known as ("aka") "Niko," "Nazo," and "Nick," was a resident of Los Angeles County in the Central District of California.

2.    Defendant ARNOLD MORADIANS, aka "Julian," was a resident of Los Angeles County.

3.    Defendant CYNTHIA BORJAS, aka "Cindy" and "Cindee," was a resident of Los Angeles County.

4.    Defendant APRIL FERGUSON was a resident of Canada.

5.    Defendant AVETIS HEKIMYAN, aka "Avo," "Chef Avo," and "Novva," was a resident of Los Angeles County.

6.    Defendant ROSS TARKHAN was a resident of Los Angeles County.

7.    Defendant TIGRAN HOVANESIAN was a resident of Los Angeles County.

8.    Defendant ARMEN VARDEVARYAN, aka "Gonch," was a resident of Los Angeles County.

9.    Defendant CRAIG HIGDON was a resident of Florida.

10.    Defendant HELEN SPANGLER was a resident of Oakdale, California.

11.    Defendant VICTOR LOSSI was a resident of Los Angeles County.

12.    Defendant MARINE SARKISIAN was a resident of Los Angeles

County.

13. Victim Lender 1 was a private money lender headquartered in San Clemente, California, that operated throughout Los Angeles County.

14. Victim Lender 2 was a private money lender headquartered in Calabasas, California, that operated throughout Los Angeles County.

15. Victim Lender 3 was a private money lender headquartered in Los Altos, California, that operated throughout Los Angeles County.

16. Victim Lender 4 was a private money lender headquartered in San Diego, California, that operated throughout Los Angeles County.

17. Bank of America, N.A. ("BoA"), was a financial institution, the deposits of which were insured by the Federal Deposit Insurance Corporation (the "FDIC").

18. Bank of Montreal was a Canadian bank headquartered in Toronto that operated both in Canada and in the United States through its subsidiary, BMO Bank N.A.

19. Bank of the West ("BotW") was a financial institution, the deposits of which were insured by the FDIC.

20. Citibank, N.A. ("Citibank"), was a financial institution, the deposits of which were insured by the FDIC.

21. JPMorgan Chase Bank, N.A. ("Chase"), was a financial institution, the deposits of which were insured by the FDIC.

22. US Bank N.A. ("US Bank"), was a financial institution, the deposits of which were insured by the FDIC.

23. Varo Bank, N.A. ("Varo"), was a financial institution, the deposits of which were insured by the FDIC.

24. Wells Fargo Bank, N.A. ("Wells Fargo"), was a financial institution, the deposits of which were insured by the FDIC.

25. Federal Express Corporation, commonly referred to as FedEx ("FedEx"), was a private and commercial interstate carrier that operated throughout the United States. FedEx accepted packages for delivery and delivered those packages throughout the United States. FedEx maintained locations where customers could deposit packages for delivery by FedEx.

B. OBJECT OF THE CONSPIRACY

26. Beginning no later than in or around January 2021, and continuing through at least in or around May 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants CHAKRIAN, MORADIANS, BORJAS, FERGUSON, HEKIMYAN, TARKHAN, VARDEVARYAN, HIGDON, SPANGLER, LOSSI, and SARKISIAN conspired with each other and others known and unknown to the Grand Jury to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

C. MANNER AND MEANS OF THE CONSPIRACY

27. The object of the conspiracy was to be accomplished, in substance, as follows:

a. Defendants CHAKRIAN, MORADIANS, TARKHAN, and others known and unknown to the Grand Jury would fraudulently obtain personal identifying information ("PII") of victims who owned properties, or otherwise resided in, Los Angeles County and elsewhere (the "identity theft victims").

b. Defendants CHAKRIAN and HIGDON, and others known and unknown to the Grand Jury, would fraudulently obtain authentic, and/or cause to be created counterfeit, identification documents using the PII of the identity theft victims.

c. Defendants BORJAS, FERGUSON, and HEKIMYAN, and others

4

known and unknown to the Grand Jury, would create e-mail accounts in the names of the identity theft victims to impersonate them.

d.   Using the identity theft victims' PII, the fraudulent identification documents, and the fraudulent e-mail addresses, defendants CHAKRIAN, MORADIANS, FERGUSON, HEKIMYAN, VARDEVARYAN, and SPANGLER, and others known and unknown to the Grand Jury, would submit and/or cause to be submitted applications to private money lenders for hard money loans secured by the identity theft victims' properties.  In so doing, defendants CHAKRIAN, MORADIANS, FERGUSON, HEKIMYAN, and SPANGLER would misrepresent themselves as agents, brokers, representatives, and/or relatives of the identity theft victims.

e.   Defendants CHAKRIAN, FERGUSON, HEKIMYAN, HIGDON, and SPANGLER, and others known and unknown to the Grand Jury, would falsify, fabricate, and fraudulently cause to be created and sent to private money lenders various documents containing material misrepresentations about: (i) the identity theft victims' identities, assets, finances, and health; (ii) the intended purpose of the loan proceeds; and (iii) the types of properties being used to secure the loans.  Such falsified and fabricated documents included, but were not limited to, Universal Residential Loan Applications (commonly referred to as Fannie Mae Form 1003 ("Form 1003")), bank statements, rental agreements, floor plans, utility bills, doctors' notes, and death certificates.

f.   Upon receiving closing documents from private money lenders, defendants CHAKRIAN, FERGUSON, HEKIMYAN, LOSSI, and SARKISIAN, and others known and unknown to the Grand Jury, would cause these closing documents to be fraudulently notarized and signed

by individuals impersonating the identity theft victims.

g.   Using stolen and unlawfully possessed PII from identity theft victims, defendant TARKHAN would accumulate "profiles" of personal information, including names, dates of birth, and social security numbers, to create synthetic identities, that is, profiles or identification documents that combined fictious profile information with real victim PII.

h.   Using these synthetic identities, defendant TARKHAN would cause bank accounts to be opened under false and fictious names to be used as funnel accounts, that is, bank accounts into which would be deposited and withdrawn proceeds derived from wire fraud.

i.   In reliance on defendants' material false statements, representations, and certifications, private money lenders approved loans and caused funds to be disbursed via check and wire to mailboxes and bank accounts controlled by defendants CHAKRIAN, FERGUSON, and TARKHAN, and others known and unknown to the Grand Jury.

D.   OVERT ACTS

28.   In furtherance of the conspiracy, and to accomplish its object, defendants CHAKRIAN, MORADIANS, BORJAS, FERGUSON, HEKIMYAN, TARKHAN, VARDEVARYAN, HIGDON, SPANGLER, LOSSI, and SARKISIAN, and others known and unknown to the Grand Jury, on or about the dates set forth below, committed and caused to be committed the following overt acts, among others, in the Central District of California and elsewhere:

**Property A, Sunset Plaza Drive, Los Angeles, California**

Overt Act No. 1:    On March 22, 2022, defendant CHAKRIAN, acting under false and fraudulent pretenses, obtained a check from

Victim T.B. and a photograph of Victim T.B.'s California driver's license.

Overt Act No. 2:    On March 28, 2022, defendant FERGUSON caused the preparation of a fraudulent Form 1003 that contained Victim T.B.'s PII.

Overt Act No. 3:    On April 5, 2022, at defendant CHAKRIAN's direction, defendant FERGUSON, misrepresenting herself as an agent for Victim T.B., contacted Victim Lender 1 via e-mail to apply for a $1.25 million hard money loan on Property A, a property co-owned by Victims T.B. and P.S. located on Sunset Plaza Drive in Los Angeles, California.  Defendant FERGUSON attached to her e-mail the fraudulent Form 1003 that contained Victim T.B.'s PII, as well as the photograph of Victim T.B.'s California driver's license, that defendant CHAKRIAN fraudulently obtained.

Overt Act No. 4:    On April 20, 2022, defendants CHAKRIAN and FERGUSON, misrepresenting themselves as agents for Victim T.B., contacted Victim Lender 2 via e-mail to apply for a $1.2 million hard money loan on Property A.  Defendant FERGUSON attached to the e-mail the fraudulent Form 1003 that contained Victim T.B.'s PII, as well as the photograph of Victim T.B.'s California driver's license that defendant CHAKRIAN fraudulently obtained.

Overt Act No. 5:    On May 10, 2022, defendant FERGUSON caused to be created an e-mail account in Victim T.B.'s name (the "Victim T.B. e-mail account").

Overt Act No. 6:    Beginning no later than May 12, 2022, and continuing through at least June 10, 2022, defendants CHAKRIAN, FERGUSON, and HIGDON caused to be created fake and/or digitally altered bank statements, utility bills, and business partnership

7

agreements for Victim T.B., which defendant FERGUSON subsequently sent to Victim Lenders 1 and 2.

Overt Act No. 7:   On June 3, 2022, defendant FERGUSON attempted to order a death certificate for an individual with the same name as Victim P.S., even though Victim P.S. was not deceased.

Overt Act No. 8:   On June 28, 2022, defendants CHAKRIAN and FERGUSON fraudulently caused to be signed loan documents from Victim Lender 1 in Victim T.B.'s name.

Overt Act No. 9:   On July 11, 2022, defendants CHAKRIAN and FERGUSON participated in a video call with Victim Lender 1 wherein they misrepresented themselves to be agents and/or relatives of Victim T.B.

Overt Act No. 10:   On July 20, 2022, defendant HIGDON attempted to order a death certificate using the name of Victim P.S., even though Victim P.S. was not deceased.

Overt Act No. 11:   On July 21, 2022, defendant CHAKRIAN and others known and unknown to the Grand Jury fraudulently caused to be executed and notarized closing loan documents from Victim Lender 2 in Victim T.B.'s name.

Overt Act No. 12:   On July 23, 2022, defendant HIGDON e-mailed defendants CHAKRIAN and FERGUSON an image of a Costco membership card that defendant HIGDON had digitally altered to depict Victim T.B.'s name and image.

Overt Act No. 13:   On July 24, 2022, defendant CHAKRIAN texted a representative for Victim Lender 2 a photograph of the Costco membership card that had been digitally altered by defendant HIGDON to contain Victim T.B.'s name and image.

Overt Act No. 14:   On July 25, 2022, defendant HIGDON e-mailed

defendant CHAKRIAN a copy of defendant HIGDON's mother's death certificate, which defendant HIGDON had digitally altered to contain Victim P.S.'s PII.

Overt Act No. 15:   On July 26, 2022, defendant CHAKRIAN forwarded to defendant FERGUSON an e-mail from defendant HIGDON containing the digitally altered death certificate for Victim P.S.

Overt Act No. 16:   On July 26, 2022, defendant CHAKRIAN caused to be delivered to Victim Lender 2 a copy of the digitally altered death certificate for Victim P.S. that defendant HIGDON had prepared.

Overt Act No. 17:   On August 12, 2022, defendants CHAKRIAN and FERGUSON impersonated Victim T.B. by sending an e-mail from the Victim T.B. e-mail account to the escrow agency overseeing the deal with Victim Lender 2.  The e-mail demanded that escrow disburse the loan proceeds from the deal with Victim Lender 2 to a limited liability company affiliated with defendant CHAKRIAN.

Overt Act No. 18:   On August 22, 2022, defendants CHAKRIAN, FERGUSON, and SPANGLER, and others known and unknown to the Grand Jury, fraudulently caused to be deposited a $35,000 check addressed to Victim T.B. into a Wells Fargo bank account ending in 2302.

**Properties B & C, North Sycamore Avenue, Los Angeles, California**

Overt Act No. 19:   On July 13, 2022, defendant MORADIANS, misrepresenting himself to be an agent for Victim M.M., e-mailed a private money lender seeking loans on two properties owned by Victim M.M., including Property B, which is located on North Sycamore Avenue, Los Angeles, California.

Overt Act No. 20:   On July 16, 2022, defendant MORADIANS e-mailed defendant BORJAS offer letters that he received from private money lenders for loans on several of Victim M.M.'s properties,

including Property C, which is located on North Sycamore Avenue in Los Angeles, California.

Overt Act No. 21:   On July 25, 2022, defendant MORADIANS e-mailed defendant BORJAS a Form 1003 that contained Victim M.M.'s full name, date of birth, and social security number, but that listed defendant BORJAS's cell phone number as Victim M.M.'s contact number.

Overt Act No. 22:   On October 19, 2022, defendant MORADIANS possessed a document containing Victim M.M.'s PII and personal financial information, including account numbers for Victim M.M.'s bank accounts at Wells Fargo, BoA, and US Bank, as well as equity estimates for Victim M.M.'s properties in Los Angeles County.

Overt Act No. 23:   Between October 20 and October 26, 2022, at defendant CHAKRIAN's instruction, defendants FERGUSON and SPANGLER obtained property profiles for several of Victim M.M.'s properties in Los Angeles County.

Overt Act No. 24:   On November 6, 2022, defendant CHAKRIAN e-mailed defendant FERGUSON Victim M.M.'s social security number and bank account number.  Defendant CHAKRIAN further instructed defendant FERGUSON to obtain a credit report for Victim M.M.

Overt Act No. 25:    On November 10, 2022, defendants FERGUSON and SPANGLER caused the preparation of a letter from a fake credit repair agency falsely claiming to have been retained by Victim M.M. to repair her credit.

Overt Act No. 26:   Beginning on November 10, 2022, and continuing through at least December 23, 2022, defendants CHAKRIAN, FERGUSON, HEKIMYAN, and SPANGLER, and others known and unknown to the Grand Jury, caused the forgery of a letter from a physician falsely claiming to have administered a mental evaluation of Victim M.M.

10

Overt Act No. 27:   On December 13, 2022, defendant CHAKRIAN texted defendant VARDEVARYAN, requesting "account" information for Victim M.M.

Overt Act No. 28:   On December 13, 2022, defendant FERGUSON e-mailed Victim Lender 3 to apply for a hard money loan secured by Properties B and C (collectively, the "Victim M.M. Properties"). Defendant FERGUSON attached to her e-mail a fraudulent Form 1003 for Victim M.M. that contained Victim M.M.'s PII but provided defendant MORADIANS's cell phone number as Victim M.M.'s contact number, as well as the fake credit repair letter that she and defendant SPANGLER caused to be prepared.

Overt Act No. 29:   On December 27, 2022, defendant FERGUSON e-mailed Victim Lender 3 the forged physician's letter that she and defendants CHAKRIAN, HEKIMYAN, and SPANGLER caused to be prepared.

Overt Act No. 30:   On January 2, 2023, defendant CHAKRIAN texted defendant VARDEVARYAN about obtaining a "2nd id" and "pas[s]port" in Victim M.M.'s name.

Overt Act No. 31:   On January 3, 2023, via text message, defendants CHAKRIAN, MORADIANS, and VARDEVARYAN agreed to meet to sign documents pertaining to the Victim M.M. Properties.

Overt Act No. 32:   On January 3, 2023, defendant CHAKRIAN texted defendant VARDEVARYAN an accounting for the Victim M.M. loan scheme.

Overt Act No. 33:   On January 4, 2023, defendant CHAKRIAN e-mailed defendant FERGUSON photographs of a counterfeit U.S. passport card in Victim M.M.'s name.

Overt Act No. 34:   On January 4, 2023, defendant CHAKRIAN texted defendants MORADIANS and VARDEVARYAN asking to meet up to

11

discuss "Signing , Tel , account .. or we going to lose the deals."

Overt Act No. 35:   On January 5, 2023, defendant CHAKRIAN possessed Victim M.M.'s California driver's license and a counterfeit U.S. passport card in Victim M.M.'s name.

Overt Act No. 36:   On January 20, 2023, defendant HEKIMYAN, and others known and unknown to the Grand Jury, using a notary stamp defendant HEKIMYAN was not authorized to possess, caused a notarization to be electronically affixed to closing documents from Victim Lender 3 for a $600,000 loan on Property C.

Overt Act No. 37:   On January 19 and January 24, 2023, defendants CHAKRIAN, FERGUSON, and HEKIMYAN, and others known and unknown to the Grand Jury, caused closing documents from Victim Lender 3 for Property C to be fraudulently signed in Victim M.M.'s name.

**Property D, South Beverly Glen Boulevard, Los Angeles, California; Properties E & F, Mesa Road, Santa Monica, California; and Property G, North Grand Avenue, Los Angeles, California**

Overt Act No. 38:   On or around October 4, 2021, defendant TARKHAN unlawfully possessed and used a social security number belonging to someone other than himself to open a BoA account ending in 9616.

Overt Act No. 39:   On October 3, 2022, defendant CHAKRIAN e-mailed defendant FERGUSON requesting that she open escrow and obtain property profiles for eight properties owned by Victim C.B. in Los Angeles County.

Overt Act No. 40:   Between October 6 and October 8, 2022, at defendant CHAKRIAN's direction, defendants FERGUSON and SPANGLER, and others known and unknown to the Grand Jury, obtained property

12

profiles for eight properties owned by Victim C.B. in Los Angeles County.

Overt Act No. 41:  On October 7, 2022, defendant CHAKRIAN e-mailed defendant FERGUSON a photograph of a fraudulent Form 1003 containing Victim C.B.'s PII.

Overt Act No. 42:  On October 10, 2022, defendant FERGUSON caused to be prepared a fraudulent Form 1003 using Victim C.B.'s PII.

Overt Act No. 43:  On October 12, 2022, defendant CHAKRIAN e-mailed defendant FERGUSON photographs of Victim C.B.'s Colorado driver's license.

Overt Act No. 44:  On October 27, 2022, defendant FERGUSON caused to be created an e-mail account in Victim C.B.'s name (the "Victim C.B. e-mail account").

Overt Act No. 45:  On October 27, 2022, defendant FERGUSON contacted Victim Lender 4 via e-mail to apply for a hard money loan secured by four of Victim C.B.'s properties: Property D, located on South Beverly Glen Boulevard, Los Angeles, California; Properties E and F, located on Mesa Road, Santa Monica, California; and Property G located on North Grand Avenue, Los Angeles, California (collectively, "the Victim C.B. Properties").

Overt Act No. 46:  On October 28, 2022, defendants FERGUSON and SPANGLER, and others known and unknown to the Grand Jury, caused the creation of fake rental agreements for the Victim C.B. Properties to make it appear as though Victim C.B. was earning rental income from these properties.

Overt Act No. 47:  On October 28, 2022, defendants FERGUSON and SPANGLER, and others known and unknown to the Grand Jury, caused to be created a digitally altered tax return Form 1040 for Victim C.B.

13

Overt Act No. 48:   On October 30, 2022, defendant CHAKRIAN e-mailed defendant FERGUSON instructions for disbursing the loan proceeds from Victim Lender 4 to two synthetic companies controlled by defendant TARKHAN and one company controlled by another co-defendant.

Overt Act No. 49:   On October 31, 2022, defendant CHAKRIAN e-mailed defendant FERGUSON photographs of BoA account and routing numbers for the two synthetic companies controlled by defendant TARKHAN.   Defendant CHAKRIAN also provided defendant FERGUSON with a photograph of account and routing numbers for a Varo bank account that had been fraudulently opened in Victim C.B.'s name.

Overt Act No. 50:   On October 31, 2022, defendants CHAKRIAN and FERGUSON possessed business operating agreements that fraudulently listed Victim C.B. as a member and/or owner of the synthetic companies controlled by defendant TARKHAN.

Overt Act No. 51:   On October 31, 2022, defendants CHAKRIAN and SARKISIAN, and others known and unknown to the Grand Jury, unlawfully possessed a real Colorado driver's license in Victim C.B.'s name and a counterfeit U.S. passport card in Victim C.B.'s name.

Overt Act No. 52:   On October 31, 2022, defendants CHAKRIAN and SARKISIAN fraudulently caused to be signed closing documents from Victim Lender 4 in Victim C.B.'s name.

Overt Act No. 53:   On October 31, 2022, defendant LOSSI fraudulently notarized the Victim Lender 4 closing documents despite knowing that someone other than Victim C.B. had signed the documents.

Overt Act No. 54:   On October 31, 2022, defendant LOSSI e-mailed the escrow agency overseeing the Victim Lender 4 deal a photograph of defendant SARKISIAN, accompanied by defendant CHAKRIAN,

14

fraudulently signing loan paperwork in Victim C.B.'s name.

Overt Act No. 55:   On October 31, 2022, defendant LOSSI caused closing documents to be sent via FedEx that he knew to have been fraudulently signed and notarized.

Overt Act No. 56:   On November 1, 2022, defendant FERGUSON e-mailed fake residential lease agreements for Property G to the escrow agency overseeing the deal with Victim Lender 4.

Overt Act No. 57:   On November 1, 2022, defendant FERGUSON e-mailed fake shareholder loan agreements purported to be between Victim C.B. and the synthetic companies controlled by defendant TARKHAN to the escrow agency overseeing the deal with Victim Lender 4 to make it appear as though Victim C.B. was affiliated with these synthetic companies.

Overt Act No. 58:   On November 1, 2022, defendant FERGUSON e-mailed wiring instructions to the escrow agency overseeing the deal with Victim Lender 4.

Overt Act No. 59:   On November 3, 2022, defendant TARKHAN received $3,450,000 in Victim Lender 4 loan proceeds to a BoA funnel account ending in 9616.

Overt Act No. 60:   On November 3, 2022, defendant TARKHAN received $1,159,000 in Victim Lender 4 loan proceeds to a BoA funnel account ending in 6751.

Overt Act No. 61:   On November 3, 2022, defendant FERGUSON received $114,000 in "consulting fees" from the Victim Lender 4 loan deal to a Bank of Montreal account ending in 0678.

Overt Act No. 62:   On December 12, 2022, defendants CHAKRIAN and VARDEVARYAN discussed meeting with defendant LOSSI via text message.

Overt Act No. 63:   On December 13, 2022, defendant CHAKRIAN texted defendant VARDEVARYAN requesting an "account" for Victim C.B.

Overt Act No. 64:   On December 21, 2022, defendants CHAKRIAN, FERGUSON, and HEKIMYAN, and others known and unknown to the Grand Jury, caused to be e-mailed a letter to the escrow agency overseeing the deal with Victim Lender 4 demanding that $150,000 of the loan proceeds be deposited into a Wells Fargo bank account ending in 0359 controlled by defendant HEKIMYAN.

Overt Act No. 65:   On December 28, 2022, defendant HEKIMYAN caused to be mailed via Fedex notarized documents that had been fraudulently signed in Victim C.B.'s name.

Overt Act No. 66:   On January 6, 2023, defendant HEKIMYAN caused to be digitally altered a Wells Fargo bank statement for the account ending in 0359 to make it appear as though Victim C.B. was a joint account holder.

COUNTS TWO THROUGH EIGHT

[18 U.S.C. §§ 1343, 2(a)]

[DEFENDANTS CHAKRIAN, MORADIANS, BORJAS, FERGUSON, HEKIMYAN, TARKHAN, VARDEVARYAN, HIGDON, SPANGLER, LOSSI, AND SARKISIAN]

29.  The Grand Jury realleges paragraphs 1 through 25, 27, and 28 of this Indictment here.

A.   THE SCHEME TO DEFRAUD

30.  Beginning no later than in or around January 2021, and continuing through at least in or around May 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants CHAKRIAN, MORADIANS, BORJAS, FERGUSON, HEKIMYAN, TARKHAN, VARDEVARYAN, HIGDON, SPANGLER, LOSSI, and SARKISIAN, and others known and unknown to the Grand Jury, each aiding and abetting the others, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud Victim Lenders 1 through 4 as to material matters, and to obtain money and property from the victim lenders by means of materially false and fraudulent pretenses, representations, and promises.

31.  The scheme to defraud operated, in substance, as described in paragraph 27 of this Indictment.

B.   THE USE OF THE WIRES

32.  On or about the dates set forth below, within the Central District of California, and elsewhere, defendants CHAKRIAN, MORADIANS, BORJAS, FERGUSON, HEKIMYAN, TARKHAN, VARDEVARYAN, HIGDON, SPANGLER, LOSSI, and SARKISIAN, and others known and unknown to the Grand Jury, for the purpose of executing the scheme to defraud described above, transmitted and caused to be transmitted the

17

following items by means of wire communications in interstate commerce:

| COUNT | DATE | INTERSTATE WIRE TRANSMISSION |
|-------|------|------------------------------|
| TWO | 4/5/22 | E-mail from defendant FERGUSON to Victim Lender 2 titled "New Deal . . . Sunset Plaza Drive," which attached a photograph of Victim T.B.'s California driver's license and a fraudulent Form 1003 that contained Victim T.B.'s PII. |
| THREE | 7/26/22 | E-mail titled "BC" that defendant CHAKRIAN forwarded to defendant FERGUSON containing a copy of the death certificate of defendant HIGDON's mother, which had been digitally manipulated to contain Victim P.S.'s PII. |
| FOUR | 10/31/22 | E-mail from defendant LOSSI to the escrow agency overseeing the deal with Victim Lender 4 containing a photograph of defendants CHAKRIAN and SARKISIAN causing closing documents to be signed in Victim C.B.'s name. |
| FIVE | 11/3/22 | A wire disbursing $3,450,000 from the Victim C.B. fraud into a BoA bank account ending in 9616. |
| SIX | 11/3/22 | Wire transfer of $1,159,000 from the Victim C.B. fraud into a BoA bank account ending in 6751. |
| SEVEN | 11/3/22 | Wire transfer of $114,000 from the Victim C.B. fraud into a Bank of Montreal account ending in 0678. |
| EIGHT | 12/23/22 | E-mail from defendant HEKIMYAN to defendant FERGUSON containing a fraudulent physician's letter for Victim M.M. |

COUNT NINE

[18 U.S.C. §§ 1028A(a)(1), 2(a)]

[DEFENDANTS CHAKRIAN, MORADIANS, BORJAS, FERGUSON, HEKIMYAN, TARKHAN, SPANGLER, LOSSI, AND SARKISIAN]

33.  The Grand Jury realleges paragraphs 1 through 25, 27, and 28 of this Indictment here.

34.  Beginning no later than October 4, 2021, and continuing to at least December 21, 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendants CHAKRIAN, MORADIANS, BORJAS, FERGUSON, HEKIMYAN, TARKHAN, SPANGLER, LOSSI, and SARKISIAN, each aiding and abetting the others, knowingly transferred, possessed, and used, and willfully caused to be transferred, possessed, and used, without lawful authority, means of identification that defendants CHAKRIAN, MORADIANS, BORJAS, FERGUSON, HEKIMYAN, TARKHAN, SPANGLER, LOSSI, and SARKISIAN knew belonged to other persons, that is, the Colorado driver's license number for Victim C.B., the California driver's license number for Victim T.B., the name of Victim P.S., the California driver's license number for Victim M.M., the California driver's license number for Victim J.A.G., and a social security number of a third party, during and in relation to a felony violation of Title 18, United States Code, Section 1349, Conspiracy to Commit Wire Fraud, as charged in Count One of this Indictment.

COUNT TEN

[18 U.S.C. § 1956(h)]

[DEFENDANTS CHAKRIAN, MORADIANS, FERGUSON, TARKHAN, AND HOVANESIAN]

35.   The Grand Jury realleges paragraphs 1 through 25, 27, and 28 of this Indictment here.

A.   OBJECT OF THE CONSPIRACY

36.   Beginning no later than in or around October 2021 and continuing through at least  January 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants CHAKRIAN, MORADIANS, FERGUSON, TARKHAN, and HOVANESIAN conspired with each other and others known and unknown to the Grand Jury to knowingly conduct and attempt to conduct financial transactions affecting interstate commerce and foreign commerce, which transactions involved the proceeds of specified unlawful activity, that is, wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, and while conducting and attempting to conduct such financial transactions, knew that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

B.   MANNER AND MEANS OF THE CONSPIRACY

37.   The object of the conspiracy was to be accomplished, in substance, as follows:

a.   Defendant TARKHAN would cause bank accounts to be opened under false and fictitious names to be used as funnel

20

accounts, that is, bank accounts into which defendants CHAKRIAN, FERGUSON, and TARKHAN, and others known and unknown to the Grand Jury, would deposit and withdraw proceeds derived from wire fraud so as to conceal and disguise the nature, location, source, ownership, and control of the proceeds.

b.    Defendants CHAKRIAN and FERGUSON would cause to be deposited proceeds derived from wire fraud into two funnel accounts opened and/or controlled by defendant TARKHAN:

i.    BoA account ending in 9616 ("BoA 9616"); and

ii.   BoA account ending in 6751 ("BoA 6751").

c.    To conceal and disguise the location, ownership, and control of the wire fraud scheme proceeds deposited into the BoA 9616 and 6751 accounts, defendant TARKHAN would write checks drawn on and transfer and wire money from the BoA 9616 and 6751 accounts into further funnel accounts that he opened and/or controlled, including:

i.    transfers and wires from the BoA 9616 account into the following additional accounts:

(I)  BoA account ending in 9645 ("BoA 9645"); and

(II) BoA account ending in 9632 ("BoA 9632");

ii.   checks drawn on the BoA 9616 account into a Chase account ending in 8353 ("Chase 8353"); and

iii.  transfers and wires from the BoA 6751 account into a Citibank account ending in 5751 ("Citibank 5751").

d.    To further conceal the location, ownership, and control of the wire fraud scheme proceeds, defendant TARKHAN would transfer and wire money between and amongst the funnel accounts, including:

21

i.    transfers and wires from the BoA 9645 and 9632 accounts back to the BoA 9616 account;

ii.   transfers and wires from the BoA 9645 account to the Chase 8353 account;

iii. transfers and wires from the BoA 9632 account to the BoA 9645 account and the Citibank 5751 account; and

iv.   transfers and wires from the Citibank 5751 account to the Chase 8353 account.

e.    Defendant TARKHAN would cause to be transferred and wired the proceeds of the wire fraud scheme from the Chase 8353 account into further accounts controlled and owned by him and defendants MORADIANS and HOVANESIAN, and others known and unknown to the Grand Jury, including:

i.    transfers and wires from the Chase 8353 account to a Citibank account ending in 6673 ("Citibank 6673") controlled by defendant HOVANESIAN;

ii.   transfers and wires from the Chase 8353 account to an internet-based escrow company, and ultimately to a BotW account ending in 6959 controlled by defendant MORADIANS; and

iii. transfers and wires from the Chase 8353 account to a Chase account ending in 5670 ("Chase 5670") controlled by defendant TARKHAN, and ultimately to the Citibank 6673 account controlled by defendant HOVANESIAN.

f.    Defendant CHAKRIAN and others known and unknown to the Grand Jury would provide instructions to defendant HOVANESIAN for how to withdraw and disburse the fraudulently obtained funds to designated co-conspirators.

g.    Defendants MORADIANS, TARKHAN, and HOVANESIAN, and others known and unknown to the Grand Jury, would cause to be disbursed the illicit funds, including through cash withdrawals, check cashing, writing checks, or transferring and wiring funds.

C.    OVERT ACTS

38.   In furtherance of the conspiracy, and to accomplish its object, defendants CHAKRIAN, MORADIANS, FERGUSON, TARKHAN, and HOVANESIAN, and others known and unknown to the Grand Jury, on or about the dates set forth below, committed and caused to be committed, the following overt acts, among others, in the Central District of California and elsewhere:

Overt Act No. 1:    No later than October 4, 2021, defendant TARKHAN opened or caused to be opened the BoA 9616, 9645, and 9632 accounts under the name "Suntrust Advertising Group."

Overt Act No. 2:    No later than July 7, 2022, defendant TARKHAN opened or caused to be opened the BoA 6751 account under the name "Skyline United Truckers."

Overt Act No. 3:    No later than January 1, 2022, defendant TARKHAN opened or caused to be opened the Citibank 5751 account under the name "E.M."

Overt Act No. 4:    No later than October 17, 2021, defendant TARKHAN opened or caused to be opened the Chase 8353 account under the name "BHG Consulting Group."

Overt Act No. 5:    On November 3, 2022, defendants CHAKRIAN, FERGUSON, and TARKHAN, and others known and unknown to the Grand Jury, caused to be transferred or wired $3,450,000 in wire fraud proceeds into the BoA 9616 account.

23

Overt Act No. 6:   On November 3, 2022, defendants CHAKRIAN, FERGUSON, and TARKHAN, and others known and unknown to the Grand Jury, caused to be transferred or wired $1,159,000 in wire fraud proceeds into the BoA 6751 account.

Overt Act No. 7:   Between November 3 and November 4, 2022, defendant TARKHAN caused two wires totaling approximately $966,180 to be sent from the BoA 9616 account to the BoA 9632 account.

Overt Act No. 8:   Between November 3 and November 9, 2022, in a series of transactions, defendant TARKHAN caused four wires totaling approximately $2,464,767 to be sent from the BoA 9616 account to the BoA 9645 account.

Overt Act No. 9:   On November 3, 2022, defendant TARKHAN wired $137,000 from the BoA 9632 account to the BoA 9645 account.

Overt Act No. 10:   On November 3, 2022, defendant TARKHAN wired $3,400 from the BoA 9632 account to the Citibank 5751 account.

Overt Act No. 11:   Between November 7 and November 14, 2022, in a series of transactions, defendant TARKHAN caused four wires totaling approximately $1,153,632 to be sent from the BoA 6751 account to the Citibank 5751 account.

Overt Act No. 12:   Between November 9 and November 16, 2022, in a series of transactions, defendant TARKHAN caused three wires totaling approximately $970,766.77 to be sent from the Citibank 5751 account to the Chase 8353 account.

Overt Act No. 13:   Between November 18 and November 25, 2022, in a series of transactions, defendant TARKHAN caused two wires totaling approximately $954,580 to be sent from the BoA 9632 account to the BoA 9616 account.

24

Overt Act No. 14:   Between November 18 and November 25, 2022, in a series of transactions, defendant TARKHAN caused to be deposited into the Chase 8353 account checks numbers 1013, 1015, 1019, and 1021, totaling approximately $1,672,902, drawn on the BoA 9616 account.

Overt Act No. 15:   On November 25, 2022, defendant TARKHAN caused a wire totaling approximately $698,000 to be sent from the BoA 9645 account to the BoA 9616 account.

Overt Act No. 16:   On November 21, 2022, defendant TARKHAN caused a wire of approximately $199,762.20 to be sent from the Chase 8353 account to an internet-based escrow company.

Overt Act No. 17:   On November 28, 2022, defendant TARKHAN, caused to be wired and transferred approximately $197,990 from an internet-based escrow company to a BotW account ending in 6959 that was opened and/or controlled by defendant MORADIANS.

Overt Act No. 18:   Between November 14 and December 1, 2022, in a series of transactions, defendant TARKHAN caused to be wired approximately $257,500 from the Chase 8353 account to a Citibank account ending in 6673 ("Citibank 6673") opened and/or controlled by defendant HOVANESIAN.

Overt Act No. 19:   On December 5, 2022, defendant CHAKRIAN instructed defendant HOVANESIAN via text message to get him a $46,500 cashier's check from the Citibank 6673 account that defendant HOVANESIAN controlled.

Overt Act No. 20:   On December 5, 2022, defendant HOVANESIAN obtained a $46,500 cashier's check for defendant CHAKRIAN from the Citibank 6673 account that he controlled.

25

COUNTS ELEVEN THROUGH FIFTEEN

[18 U.S.C. §§ 1956(a)(1)(B)(i), 2(a)]

[DEFENDANT TARKHAN]

39.  The Grand Jury realleges paragraphs 1 through 25, 27, 28, 37, and 38 of this Indictment here.

40.  On or about the dates set forth below, in Los Angeles County, within the Central District of California, and elsewhere, defendant TARKHAN, and others known and unknown to the Grand Jury, each aiding and abetting one another, knowing the property involved represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, knowingly conducted and willfully caused to be conducted the following financial transactions:

26

| COUNT | DATE | FINANCIAL TRANSACTION |
|-------|------|----------------------|
| ELEVEN | 11/21/2022 | Defendant TARKHAN caused $199,762.20 to be wired from BHG Consulting Group JPMC 8353 to an internet-based escrow company. |
| TWELVE | 11/25/2022 | Defendant TARKHAN caused Check #1015 for $498,532 to be written from Suntrust Advertising Group BOA 9616 to BHG Consulting Group JPMC 8353. |
| THIRTEEN | 11/25/2022 | Defendant TARKHAN caused Check #1019 for $298,318 to be written from Suntrust Advertising Group BOA 9616 to BHG Consulting Group JPMC 8353. |
| FOURTEEN | 11/25/2022 | Defendant TARKHAN caused Check #1021 for $486,412 to be written from Suntrust Advertising Group BOA 9616 to BHG Consulting Group JPMC 8353. |
| FIFTEEN | 12/1/2022 | Defendant TARKHAN caused $195,000 to be wired from BHG Consulting Group JPMC 8353 to Los Angeles Federal Credit Union account ending 9301-09, controlled by HOVANESIAN. |

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

41.    Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Sections 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in any of Counts One through Nine of this Indictment.

42.    Any defendant so convicted shall forfeit to the United States of America the following:

a.    All right, title and interest in any and all property, real or personal, constituting or derived from any proceeds obtained, directly or indirectly, as a result of the offense;

b.    To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph a.

43.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 853(p), any defendant so convicted shall forfeit substitute property, up to the total value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

28

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

44.   Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of defendant's conviction of the offenses set forth in Counts Ten through Fifteen of this Indictment.

45.   Any defendant so convicted shall forfeit to the United States of America the following:

a.   Any property, real or personal, involved in such offense, and any property traceable to such property; and

b.   To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph a.

46.   Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), any defendant so convicted shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

A TRUE BILL


/S/ _____
Foreperson


TODD BLANCHE
Deputy Attorney General

BILAL A. ESSAYLI
First Assistant United States
Attorney


ALEXANDER B. SCHWAB
Assistant United States Attorney
Acting Chief, Criminal Division

KEVIN J. BUTLER
Assistant United States Attorney
Chief, Major Crimes Section

HAVA MIRELL
Assistant United States Attorney
Criminal Appeals Section

CLAIRE E. KELLY
Assistant United States Attorney
Deputy Chief, General Crimes
Section

30